**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ANNIE V. KENNEDY as Tutrix and on          CIVIL ACTION NO. 12-01858
behalf of the minor child, LAJERRION
KENNEDY, minor child of the decedent
LASHUNDA RENEE KENNEDY

         VERSUS                            JUDGE S. MAURICE HICKS, JR.

PFIZER, INC.                               MAGISTRATE JUDGE HORNSBY


**MEMORANDUM RULING**

Before this Court is a FRCP Rule 12(b)(6) Motion to Dismiss (Record Document 11)

filed by Defendant, Pfizer, Inc. ("Pfizer"). The motion avers that this Court should dismiss

Plaintiffs' Complaint because "(1) [P]laintiffs impermissibly plead product liability claims that

fall outside the Louisiana Product Liability Act, La. Rev. Stat. §§ 9:2800.51-60 ("LPLA") and

(2) to the extent they do attempt to plead LPLA claims, they have failed to plead them with

the required reference to the applicable provisions of the LPLA and sufficient facts to put

Pfizer on notice of their bases."(Record Document 11-1). For the reasons which follow,

Pfizer's motion is **GRANTED** and Plaintiffs' claims are **DISMISSED**.

**I.    Background**

On or about July 9, 2011, LaShunda Renee Kennedy ("Kennedy") allegedly suffered

a seizure for which she was admitted to Louisiana State University Health Science Center

in Shreveport (LSUHSC-S). While admitted to LSUHSC-S, Kennedy allegedly ingested the

prescribed anti-seizure medication Dilantin,  manufactured by Pfizer. (Complaint ¶ 3).

Plaintiffs allege that almost two weeks later on or about July 20, 2011, as a result of using

the allegedly defective drug, Kennedy  was diagnosed with having Stevens-Johnson

Syndrome ("SJS").[1] (Complaint ¶ 3). SJS caused her to suffer from a "burning sensation from the inside out of her body beginning in her throat area." (Complaint ¶ 3). Kennedy also "suffered hair loss, coughed up black objects and went into a coma." (Complaint ¶ 3). Plaintiffs additionally allege that the drug ultimately caused the death of Kennedy.[2]  On July 9, 2012,  Annie V. Kennedy, as Tutrix and on behalf of LaJerrion Kennedy, minor child of the decedent, filed the instant action against Pfizer.

## II.    Law and Analysis

### A.    Legal Standard

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) does not need to detail factual allegations in order to avoid dismissal, Plaintiffs' factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F. 3d 397, 401 (5th Cir. 2007). A plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[1]The Complaint alleges that Kennedy was diagnosed with SJS. The Court understood this to be Stevens-Johnson syndrome, as no syndrome called Steven Johnson Syndrome could be found in the 2013 Physicians' Desk Reference.

[2]The Complaint fails to allege a specific date of Kennedy's death.

the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

The  LPLA provides "the exclusive theories of liability for manufacturers of products and establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.52. A product is unreasonably dangerous if and only if:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
> (4) The product is unreasonably dangerous because it does not conform to an express warning of the manufacturer about the product as provided in R.S. 9:2800.58.

La. R.S. § 9:2800.54. Because the LPLA provides the exclusive theories of liability for manufacturers of products, recovery "from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set for in" the LPLA is not possible. La. Rev. Stat.  § 9:2800.52.

**B.    Analysis**

Here, the complaint contains claims arising under the LPLA and several claims that do not arise under the LPLA. Pfizer argues that all of the claims should be dismissed because (1) "Plaintiffs impermissibly plead product liability claims that fall outside the [LPLA]" and (2) "to the extent they do attempt to plead LPLA claims, they have failed to plead them with the required reference to the applicable provisions of the LPLA and sufficient facts to put Pfizer on notice of their bases." (Record Document 11-1).

This Court will first address the claims which fall outside of the LPLA. Plaintiffs allege that Pfizer "through advertising, label promotion, and other communications...made intentional misrepresentations to physicians and the public...about the safety and efficacy of Dilantin." (Record Document 1 at ¶ 10). Additionally, Plaintiffs allege that compensation should be awarded for Pfizer's "negligence." (Record Document 1 at ¶ 16). This allegation includes negligence for the failure "to perform adequate testing." (Record Document 1 at ¶ 5). Plaintiffs did not contest the fact that these claims fall outside of the LPLA in their response to the Pfizer's Rule 12(b)(6) Motion. (Record Document 13). Because the LPLA provides the exclusive theories for recovery, these claims are statutorily impermissible. Accordingly, all claims which fall outside of the LPLA are **dismissed**.

The Court next turns its attention to the claims made under the LPLA. Through applying the legal standard to the four individual bases for recovery, it is clear that the LPLA allegations are legally insufficient to withstand a FRCP Rule 12(b)(6) Motion to Dismiss under Twombly.

### 1.    Construction or Composition

The first theory for recovery under the LPLA is realized if the Plaintiffs can show that a product is unreasonably dangerous in construction or composition. A claim under this theory provides a remedy "for harm caused by a product defect 'due to a mistake in the manufacturing process.'" Stahl v. Novartis Pharma. Corp., 283 F. 3d 254, 261 (5th Cir. 2002).To prevail on a claim under this theory, Plaintiffs must show that "at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise

identical products manufactured by the same manufacturer." La. Rev. Stat. § 9:2800.55;

see also Stahl at 261; Reed v. Bio Orthopedics, No. 08-30893, 318 Fed. Appx. 305 (5th Cir.

2009).

This Court found two recent cases particularly on point: Watson v.Bayer Healthcare

Pharmaceuticals, Inc., 2013 WL 1558328, E.D. La. April 11, 2013 and Harris v. Merck &

Co., Inc., 2012 WL 5384720 (W.D. La. November 1, 2012). In Watson, the court found a

plaintiff's bald allegation legally insufficient to demonstrate a mistake in the manufacturing

process of a drug when she "fail[ed] to cite facts about the 'condition' or suggest how [the

drug] deviated from its intended design." Watson at 4. Similarly, the Harris court plainly

stated that merely "reciting the allegations that a defendant is liable to plaintiff for 'providing

a product that was unreasonably dangerous in construction or composition...'" is insufficient.

Harris at 2.

Plaintiffs allege that Dilantin was the cause of the decedent's SJS and subsequent

death. (Record Document 1 and 2). Similar to the cases cited above, Plaintiffs fail to

articulate how the Dilantin allegedly ingested by the decedent deviated from its intended

composition or construction. Although Plaintiffs' Response in Opposition to Pfizer's 12(b)(6)

Motion claims to have addressed the defect in construction of the drug, it merely recites a

superficial allegation without support. (Record Document 13, p. 3, ¶ 1).  Therefore, this

LPLA theory of recovery fails to reach the standard necessary to survive a FRCP Rule

12(b)(6) Motion under the Twombly standard.

### 2.     Design

The second theory for recovery under the LPLA is for a design defect. The statute

provides:

> a product is unreasonably dangerous in design if, at the time the product left
> its manufacturer's control: (1) there existed an alternative design for the
> product that was capable of preventing the claimant's damage; and (2) the
> likelihood that the product's design would cause the claimant's damage and
> the gravity of that damage outweighed the burden on the manufacturer of
> adopting such alternative design and the adverse effect, if any, of such
> alterative design on the utility of the product. An adequate warning about a
> product shall be considered in evaluating the likelihood of damage when the
> manufacturer has used reasonable care to provide the adequate warnings
> to users and handlers of the product.

La. Rev. Stat. §9:2800.56.

Similar to a dangerous construction or composition claim, Plaintiffs must allege how

the design defect  is either caused by or relates to the injury in question. Watson at *5. The

LPLA "does not allow a fact finder to presume an unreasonably dangerous design soley

from the fact that the injury occurred." Id. at *4 (citing McCarthy v. Danek Medical, Inc., 65

F. Supp. 2d 410, 412 (E.D. La. 1999)). The courts, though, have deemed an allegation of

inaccurate dosage amount to meet this requirement. Harris at *3. In Harris, the plaintiff

specifically asserted that her 80 milligram dosage was the cause of her injury and that

other, smaller dosages would have prevented the injury. Id. As a result, the court denied

the defendant's 12(b)(6) motion with regard to this theory of recovery. Id.

In this instance, Plaintiffs have neither alleged a dosage amount, nor identified who

prescribed or administered the drug. Rather, Kennedy only asserted Dilantin was "defective

in design or formulation in that [when] it left the hands of the manufacturer and/or distributor

the foreseeable risks exceeded the benefits associated with the design or formulation."

(Record Document 1 at ¶ 8). Alternatively, Plaintiffs stated that the drug was "unreasonably dangerous, such that it was more dangerous than an ordinary consumer would expect and more dangerous than other drugs in the same class." Id. Plaintiffs' statements, however, fail to allege how the design is defective or what aspect of the design caused the injury. As specifically directed by McCarthy, this Court cannot link an injury to a defective design without factual support. Therefore, with regard to this theory of recovery, the 12(b)(6) must be **granted**.

### 3.   Inadequate Warning

The third theory for recovery under the LPLA is for an inadequate warning. The statute provides:

> a product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. Rev. Stat. § 9:2800.57.

In Harris, the court stated that a warning that failed to indicate the negative side effects of taking an 80-milligram dosage was found to be "barely sufficient." Harris at *4. The court reasoned that the doctor would not have prescribed that dosage and the plaintiff would not have suffered the resulting injuries had the manufacturer rendered an adequate warning. Id. In declining to grant the defendant's 12(b)(6) motion with regard to this issue, the court held that the defendant's argument that the plaintiff must "allege what warning would have been adequate" was misguided. Id. The court found "no citing authority wherein dismissal was deemed appropriate on the basis that plaintiff's complaint did not offer an

alternative warning, which, having not been used by the manufacturer, rendered the manufacturer's conduct unreasonable. Id.

Similarly reasoned but with the opposite result, the court in Watson granted the 12(b)(6) motion due to the plaintiff's "failure to allege facts suggesting how [the manufacturer's] allegedly inadequate warning caused her specific injury." Watson at *5. There, the plaintiff only stated that the label did not warn of the exact injury she sustained from using the medical device without articulating any causal connection. Id.

Plaintiffs claim in their complaint:

> The drug Dilantin was unaccompanied by proper warnings regarding the injuries associated with the drug...The warnings given did not accurately reflect the symptoms...or severity of the injuries...full and proper warning should have been given with respect to the use of this drug.

Record Document 13 (citing Record Document 1 ¶ 8). This assertion is far more similar to the facts in Watson, than in Harris. Plaintiffs fail to articulate a causal connection between the claimed inadequate warning and Kennedy's resulting damage. In this instance, Plaintiffs have not alleged a dosage amount; plaintiffs have not alleged who administered the drug. In fact, there is not even an allegation that a physician prescribed the medication for the decedent. This Court will not presume those facts. In stark contrast to Harris, the Plaintiffs fail to plead even "barely sufficient facts." The finding of this Court is, therefore, the same as Watson regarding this theory of recovery. Pfizer's 12(b)(6) Motion to Dismiss Kennedy's claim for inadequate warning is **granted**.[3]

---

[3]However, Pfizer's contention that the Plaintiffs must state what warning would have been adequate is misguided. See Harris, 2012 WL 5384720.

### 4.    Express Warranty

The fourth theory for recovery under the LPLA is a lack of express warranty. The

statute provides:

> a product is unreasonably dangerous when it does not conform to an
> express warranty made at any time by the manufacturer about the product
> if the express warranty has induced the claimant or another person or
> entity to use the product and the claimant's damage was proximately
> caused because the express warranty was untrue.

La. Rev. Stat. § 9:2800.58**.**

In order to prove a breach of an express warranty, plaintiffs are not required to

identify specific language offered by a manufacturer. Rather, this Court endorses and

adopts the requirement that a manufacturer may not "suppress information" and "make

false representations of...superiority and efficacy" when gaining significant market share

with a defective product. Harris, 2012 WL 5384720, at *5. The logic that market share

would not have been possible without engaging in such activity meets "the very basest

requirements" in order to deny a 12(b)(6) motion with respect to a LPLA express

warranty claim. Id. Specifically, the plaintiffs in Harris explained that the defendant

marketed a drug "under the vise [sic] that it was safe and efficacious for persons." Id. In

other words, the marketing appears to rise to the level of an express warranty if that

marketing makes claims as to the product's safety.

Kennedy alleges that, although Pfizer should have known of the risk of serious

injury, it continued to aggressively promote the dangerously defective product Dilantin.

While this Court acknowledges that it is unnecessary for the Plaintiffs to cite a specific

express warranty, it is necessary to articulate how the equivalent marketing materials

are false. Plaintiffs, however, failed to reach even this minimum standard. Rather,

Plaintiffs assert that Pfizer promoted a product that it should have known was

dangerous, but did not specifically explain that the content of their promotion

contradicted what it knew or should have known to be true. (Record Document 1 at 3).

Unlike Harris, Plaintiffs failed to show how the marketing of Dilantin by Pfizer

suppressed information, helped the company gain a market share, or induced persons

to use the drug under the ruse of safety. As a result, Pfizer's 12(b)(6) motion with regard

to this theory of recovery is **granted**.

## III.    Conclusion

Based on the foregoing, the Court finds that certain of Plaintiffs' product liability

claims fall outside the LPLA's exclusive theories of liability and are dismissed. Further,

each of the claims brought pursuant to the LPLA have insufficient factual support under

the Twombly standard, and thus fail to satisfy the Rule 12(b)(6) pleading standard.

Therefore, the FRCP Rule 12(b)(6) Motion to Dismiss (Record Document 11) filed by

Pfizer  is hereby **GRANTED** and all of Plaintiffs' claims are hereby **DISMISSED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall

issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 28th day of August,

2013.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE